# UNITED STATES DISTRICT COURT
# DISTRICT OF MARYLAND

| | |
|---|---|
| **SECURITIES AND EXCHANGE COMMISSION,**<br><br>                              **Plaintiff,**<br><br>          **v.**<br><br>**XUE LEE,**<br>   **a/k/a "Sam" LEE, and**<br>**BRENDA INDAH CHUNGA,**<br>   **a/k/a "Bitcoin Beautee,"**<br><br>                              **Defendants.** | **CIVIL ACTION NO. 24-cv-00296 ABA** |

**PLAINTIFF SECURITIES AND EXCHANGE COMMISSION'S
MEMORANDUM OF LAW IN SUPPORT OF ITS OPPOSITION TO DEFENDANT
LEE'S MOTION TO VACATE NOTICE OF DEFAULT UNDER FRCP 55(c)**

# TABLE OF CONTENTS

**INTRODUCTION** ...............................................................................................1

**FACTS AND PROCEDURAL HISTORY** ........................................................1

**ARGUMENT** ......................................................................................................5

      A.     THIS COURT SHOULD NOT SET ASIDE THE ENTRY OF DEFAULT ..........5

          1.     Defendant has not raised a meritorious defense regarding personal jurisdiction, improper venue, insufficient service, and subject matter jurisdiction ...............................................................................................6

               a. This Court has personal jurisdiction over this Defendant ......................6

               b. Venue is proper in Maryland ...............................................................9

               c. Defendant was personally served ........................................................10

               d. The Complaint alleges sufficient contacts for subject matter jurisdiction ...........................................................................................11

          2.     Defendant has not acted with reasonable promptness ..............................13

          3.     Defendant has not addressed his personal responsibility for default .........14

          4.     Prejudice to the non-moving party ..........................................................15

          5.     Prior history of dilatory action by Defendant ..........................................15

          6.     Availability of sanctions less drastic.........................................................16

**CONCLUSION** ..................................................................................................17

# TABLE OF AUTHORITIES

## CASES

*ALS Scan, Inc. v. Digit. Serv. Consultants, Inc.*,
    293 F.3d 707 (4th Cir. 2002) ............................................................................8

*Armor v. Michelin Tire Corp.*,
    113 F.3d 1231 (4th Cir. 1997) .......................................................................15

*Assurance Co. of Am. v. Seepe*,
    No. 3:09-CV-152 HTW-LRA, 2010 WL 11530489, at *3 (S.D. Miss. Apr. 28, 2010)....14

*Base Metal Trading v. OJSC Novokuznetsky Aluminum Factory*,
    283 F.3d 208 (4th Cir. 2002) .......................................................................6, 7

*Bertozzi v. King Louie Int'l, Inc.*,
    420 F. Supp. 1166 (D.R.I. 1976).....................................................................9

*Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*,
    334 F.3d 390 (4th Cir. 2003) ..........................................................................8

*Celsion Corp. v. Stearns Mgmt. Corp.*,
    No. CIV. CCB 00-1214, 2001 WL 55456, at *3 (D. Md. Jan. 18, 2001)...........................9

*Colleton Preparatory Acad. v. Hoover Universal, Inc.*,
    616 F.3d 413 (4th Cir. 2010) ..........................................................................5

*Combs v. Bakker*,
    886 F.2d 673 (4th Cir. 1989) ..........................................................................7

*Consol. Masonry & Fireproofing, Inc. v. Wagman Constr. Corp.*,
    383 F.2d 249 (4th Cir. 1967) .......................................................................5, 6

*Elliott v. Capital Int'l Bank & Trust*,
    102 F.3d 549 (5th Cir. 1996) ........................................................................14

*Europe & Overseas Commodity Traders, S.A. v. Banque Paribas London*,
    147 F.3d 118 (2d Cir. 1998).........................................................................12

*Gunn v. Minton*,
    568 U.S. 251 (2013).............................................................................11, 12

*Helicopteros Nacionales De Colom. v. Hall*,
  466 U.S. 408, 104 S. Ct. 1868, 80 L. Ed. 2d 404 (1984)....................................................8

*In re Celotex Corp.*,
  124 F.3d 619 (4th Cir. 1997) .........................................................................................7

*In re Eur. Aeronautic Defence & Space Co. Sec. Litig.*,
  703 F. Supp. 2d 348 (S.D.N.Y. 2010)...........................................................................12

*International Shoe Co. v. Washington*,
  326 U.S. 310 (1945)...........................................................................................................6

*Kokkonen v. Guardian Life Ins. Co. of America*,
  511 U.S. 375 (1994)..........................................................................................................11

*Lolatchy v. Arthur Murray, Inc.*,
  816 F.2d 951 (4th Cir. 1987) .......................................................................................15

*Matter of State Exch. Fin. Co.*,
  896 F.2d 1104 (7th Cir. 1990), ....................................................................................16

*Mitrano v. Hawes*,
  377 F.3d 402 (4th Cir. 2004). .........................................................................................7

*New Wellington Fin. Corp. v. Flagship Resort Dev. Corp.*,
  416 F.3d 290 (4th Cir. 2005) .....................................................................................7, 8

*Payne ex rel. Estate of Calzada v. Brake*,
  439 F.3d 198 (4th Cir. 2006) .........................................................................................5

*Peay v. Barnett*,
  236 Md. App. 306 (2018) ..............................................................................................10

*Pinker v. Roche Holdings, Ltd.*,
  292 F.3d 361 (3d Cir. 2002)........................................................................................7, 8

*Saudi v. Northrop Grumman Corp.*,
  427 F.3d 271 (4th Cir. 2005) .........................................................................................6

*S.C. Nat. Bank v. Baker*,
  941 F.2d 1207 (4th Cir. 1991) .....................................................................................15

*Southmark Prime Plus, L.P. v. Falzone,*
    768 F. Supp. 487 (D. Del. 1991) .................................................................9, 10

*United States v. Real Prop. & Residence,*
    149 F.3d 1176 (5th Cir. 1998) ........................................................................14

*Zorn v. Anderson,*
    263 F. Supp. 745 (S.D.N.Y. 1966) ...................................................................9

## STATUTES

15 U.S.C. § 77v(a) ..............................................................................................7

15 U.S.C. § 77v(c) ........................................................................................5, 12

15 U.S.C. § 78aa .............................................................................................7, 9

15 U.S.C. § 78aa(b) .......................................................................................5, 12

## RULES

Fed. R. Civ. P. 4(f)(2)(A) .................................................................................10

Fed. R. Civ. P. 4(f)(2)(C)(i) .............................................................................10

Fed. R. Civ. P. 4(k)(2) .....................................................................................6, 9

## OTHER AUTHORITY

Article 9(1)(B) of the UAE Civil Procedure Law .............................................10

Maryland Rule 2-535(b) ..............................................................................10, 11

Section 929P of the Dodd-Frank act ................................................................12

I.    **INTRODUCTION**

On January 6, 2025, Defendant filed a motion to vacate the Clerk's Notice of Default under Fed. R. Civ. P. 55(c). Doc. No. 19. In addition, Defendant raised "a challenge to this Court's jurisdiction" and sought to have the Complaint dismissed, alleging: (1) "lack of personal jurisdiction and Defects In Service Of Process"; and (2) a failure "to establish sufficient grounds for this Court to exercise jurisdiction" over him. Doc. No. 19 at 2.

For the reasons set forth below, Plaintiff Securities and Exchange Commission (the "SEC" or "Commission") respectfully requests that the Court deny the motion. As alleged in the detailed Complaint, Defendant Lee was the founder and mastermind behind a massive global Ponzi scheme that caused U.S. investors millions of dollars in losses after they purchased Hyperfund membership packages that had no value. Such conduct falls squarely within the purview of the U.S. Courts and the federal securities laws and Defendant's jurisdictional arguments have no merit. Simply put, Defendant was properly served, failed to respond to the Complaint, and cannot show cause why the default should be lifted.

II.    **FACTS AND PROCEDURAL HISTORY**

The SEC filed its Complaint on January 29, 2024 alleging that Lee and his co-defendants orchestrated a $1.7 billion international fraud. Doc. No. 1. The Complaint charged Lee with violations of the antifraud provisions of the federal securities laws.

As alleged in the Complaint, Lee, an Australian national who was believed to be residing in Dubai, UAE, was one of the co-founders of HyperTech Group, the purported blockchain technology conglomerate that launched HyperFund, a global, crypto asset-related, multi-level marketing pyramid and Ponzi scheme that raised over $1.7 billion from victims worldwide, including millions from U.S. investors. *Id.* at 1-3, FN 1, ¶¶ 1-7, 14. HyperTech Group claimed to

be involved in a large-scale bitcoin mining operation, but quite simply, it was not, as Lee has acknowledged. *Id.* at 3, ¶ 5.

Lee was quoted and featured prominently as the Chairman of HyperFund and as the "contact" for inquiries. *Id.* at 3, 6, ¶¶ 5, 18-20. Marketing materials relied upon by promoters like co-defendant Brenda Chunga, one of the top U.S. promoters of the scheme and who, during the relevant time, was a resident of Maryland, touted Lee's experience with prior crypto related projects that were hailed as successful. *Id.* at 7, 8, ¶¶ 22, 25.

In the scheme, investors purchased "memberships" at various levels by converting their money into the crypto asset Tether (USDT) and uploading it to the scheme's platform. That investment was reflected on the platform in HyperUnits or HU. Doc. No.1 at 8, ¶ 26. Investors were told there were two ways to make money: (i) passive rewards, which promised investors a daily return of 0.5% to 1% of the value of their investment until they earned triple the value of their initial investment; and (ii) leveraged or accelerated rewards. *Id.* at 8, ¶ 28. The leveraged or accelerated rewards amounted to nothing more than a multi-level marketing scam that encouraged members to recruit others and offered additional profits from money these additional investors poured into the scheme. *Id.* at 9-10, ¶¶ 32-36.

HyperFund was rebranded as HyperVerse with a launch event that included a fake CEO, and featured a recorded video from Defendant where he thanked the fake CEO and others for their participation and shared more about HyperVerse's "future direction….". *Id.* at 14, ¶ 49. Despite the rebranding, HyperVerse followed HyperFund's essential playbook—luring unsuspecting investors with the promise of exorbitant returns. *Id.* at 14-15, ¶¶ 53-55. After the re-branding, investors continued to report difficulties withdrawing their money, which was a complicated process (when it was even possible) that involved converting the HyperUnits to a

crypto asset that was issued by those running the scheme. *Id*. at 10-15, ¶¶ 37-38, 43, 56. By February/March of 2022, investors were not able to make withdrawals at all, and the scheme collapsed shortly thereafter. *Id*. at 15-16, ¶ 56, 59-62.

From inception to collapse, under Lee's direction, the scheme raised over $1.7 billion worldwide, including from investors in the United States. *Id*. at 16, ¶ 62. Chunga – who was a promoter on behalf of Lee's HyperFund – resided in Maryland for all or a substantial portion of the time she was engaged in promoting the scheme, many of Defendant and co-defendant Chunga's acts and transactions occurred in Maryland, and many of the harmed investors resided in Maryland during the relevant time. *Id*. at 4-5, ¶ 11.

In the related criminal case, Lee was charged by way of Indictment with conspiracy to commit securities fraud and wire fraud under 18 U.S.C. § 371, which was unsealed around the same time the Complaint was filed. *United States v. Sam Lee*, 24 CR 0021 RDB. A Superseding Indictment was filed on December 5, 2024, which charged Lee with one count of conspiracy to commit securities fraud under 18 U.S.C. § 371, and one count of conspiracy to commit wire fraud under 18 U.S.C. § 1349. *Id*. at Doc. No. 8.

On or about February 1, 2024, just three days after the Complaint had been filed and the Indictment unsealed, an article was posted on the website of the *Australian Financial Review* regarding the case. Doc. No. 15-4 (*SEC v. Xue Lee, et al.*, 24-cv-00296 ABA). The article included comments attributed to Defendant regarding the allegations, which he characterized as "embarrassing." *Id*.

The SEC, through the Department of Justice's Office of Foreign Litigation ("OFL"), retained local counsel in Dubai for the purpose of effecting service of the Complaint and Summons. Doc. No. 15-1 to 15-3. Over the course of several months, regional counsel and the

process server they retained repeatedly attempted to locate and effect service on Defendant, but to no avail. Doc. No. 15-1 at 2-3.

In early October of 2024, the SEC learned that Defendant had been detained in connection with the federal criminal charges. Doc. No. 15-1, 15-2, 15-3. On October 17, 2024, an official at the Central Prison in Al Aweer attempted to hand Defendant the Complaint and Summons, but Defendant refused to accept service. *Id*. Under federal law, Maryland law, and UAE law, notwithstanding Defendant's refusal to accept the paperwork the prison official was handing him, Defendant was served. Doc. No. 15, 15-1, 16.

Having been served on October 17, 2024, Defendant was required to answer or otherwise respond to the complaint on or before November 17, 2024. He did not do so. The Clerk of Court entered a default against Defendant Lee on December 6, 2024.

On January 6, 2025, Defendant Lee filed a motion to vacate the Clerk's notice of default under Fed. R. Civ. P. 55(c). Doc. No. 19. In addition, Defendant sought to dismiss the Complaint for lack of personal jurisdiction and defects in service of process, and claimed the Court did not have jurisdiction. As indicated in the docket entry entered by the Deputy Clerk on January 6, 2025, Defendant has also effectively entered a notice of appearance, and consented to receive notice and service electronically, via email at: samxuelee@outlook.com.

### III.   <u>ARGUMENT</u>

As set forth below, Defendant's motion should be denied. Defendant's arguments against default largely are based on flawed assertions that the underlying matter lacks "jurisdiction" because Lee claims was not in the United States at the time of the alleged misconduct. But he fundamentally misunderstands the law of personal and subject matter jurisdiction. Lee has been served with the Complaint and is alleged to have violated the federal securities laws by running of a massive global Ponzi scheme that targeted U.S. investors and caused them millions of dollars in losses. Indeed, U.S. representatives such as Brenda Chunga actively recruited U.S. investors on behalf of Lee's HyperFund. Thus, this Court clearly has jurisdiction over Lee and this matter. *See* 15 U.S.C. §§ 77v(c) and 78aa(b).

### A.   <u>THIS COURT SHOULD NOT SET ASIDE THE ENTRY OF DEFAULT</u>

Rule 55(c) provides that a "court may set aside an entry of default for good cause." Fed. R. Civ. P. 55(c). Defendant has not made such a showing so his motion should be denied.

The Fourth Circuit has held that when deciding a motion to vacate under Rule 55(c), courts are required to consider six factors: (1) whether the moving party has a meritorious defense; (2) whether the moving party acts with reasonable promptness; (3) the personal responsibility of the defaulting party; (4) the prejudice to the non-moving party; (5) whether there is a history of dilatory action; and (6) the availability of sanctions less drastic. *Payne ex rel. Estate of Calzada v. Brake*, 439 F.3d 198, 204-05 (4th Cir. 2006). The decision to set aside a default "lies largely within the discretion of the trial judge." *Id*. at 204.

The Fourth Circuit has stated that the "good cause" standard in Rule 55(c) "is more forgiving of defaulting parties because it does not implicate any interest in finality." *Colleton Preparatory Acad. v. Hoover Universal, Inc.*, 616 F.3d 413, 420 (4th Cir. 2010); see also *Consol.*

*Masonry & Fireproofing, Inc. v. Wagman Constr. Corp.*, 383 F.2d 249, 251 (4th Cir. 1967) ("Generally a default should be set aside where the moving party acts with reasonable promptness and alleges a meritorious defense."). But as set forth below, Defendant has failed to make any real showing of good cause to set aside the default.

      1.  <u>Defendant has not raised a meritorious defense regarding personal jurisdiction, improper venue, insufficient service, and subject matter jurisdiction</u>.

Defendant largely bases his arguments for lifting the default on potential defenses of lack of personal jurisdiction, improper venue, insufficient service, and subject matter jurisdiction. Doc. No. 19 at 2-5. None of these defenses have merit.

      a.  <u>This Court has personal jurisdiction over this Defendant</u>.

This Court has personal jurisdiction over Defendant. Defendant cited to *International Shoe Co. v. Washington*, 326 U.S. 310 (1945) and conceded that minimal contacts suffice for personal service. While that is true, this Court also has personal jurisdiction over this action under Rule 4(k)(2), which provides: "For a claim that arises under federal law, serving a summons … establishes personal jurisdiction over a defendant if: (A) the defendant is not subject to jurisdiction in any state's courts of general jurisdiction; and (B) exercising jurisdiction is consistent with the United States Constitution and laws."

The Fourth Circuit has adopted a three-part test to determine if personal jurisdiction has been satisfied. *Saudi v. Northrop Grumman Corp.*, 427 F.3d 271, 275 (4th Cir. 2005); *Base Metal Trading v. OJSC Novokuznetsky Aluminum Factory*, 283 F.3d 208, 215 (4th Cir. 2002). First, the suit must arise under federal law. Fed. R. Civ. P. 4(k)(2). Second, the defendant must not be subject to personal jurisdiction in any state. *Id.*; *Base Metal Trading*, 283 F.3d at 215. Third, the defendant must have contacts with the United States "consistent with the Constitution and laws of the United States." Fed. R. Civ. P. 4(k)(2).

Moreover, when personal jurisdiction is contested by a defendant on the basis of moving papers, the burden is on the plaintiff to "simply to make a prima facie showing of a sufficient jurisdictional basis to survive the jurisdictional challenge." *New Wellington Fin. Corp. v. Flagship Resort Dev. Corp.*, 416 F.3d 290, 294 (4th Cir. 2005), quoting *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989); see also *In re Celotex Corp.*, 124 F.3d 619, 628 (4th Cir. 1997). Under such circumstances, courts "must construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction." *Combs*, 886 F.2d at 676; *see also Mitrano v. Hawes*, 377 F.3d 402, 406 (4th Cir. 2004).

Here, all three claims for relief listed in the Complaint allege violations of federal securities laws, so the suit clearly arises under federal law. In addition, the Securities Act and the Exchange Act authorize nationwide service of process and permit the exercise of personal jurisdiction to the full extent of the Due Process Clause of the Fifth Amendment. *See* 15 U.S.C. §§ 77v(a), 78aa; *Pinker v. Roche Holdings, Ltd.*, 292 F.3d 361, 369 (3d Cir. 2002).

Second, we acknowledge the Complaint does not allege Defendant was present in the United States at the time of his conduct. Defendant is not subject to personal jurisdiction in any particular state and, by statute, United States District Courts have exclusive jurisdiction of the violations brought in the Complaint. 15 U.S.C. § 78aa.

And third, Defendant's contacts with the United States are consistent with Due Process under the Fifth and Fourteenth Amendments, as well as the laws of the United States. When considering notions of Constitutional Due Process in this context, courts focus on specific jurisdiction and general jurisdiction. A court may exercise specific jurisdiction "[w]hen the cause of action arises out of the defendant's contacts with the forum." *Base Metal Trading*, 283 F.3d at

213. General jurisdiction is available if the defendant's contacts with the United States are "'continuous and systematic.'" *Id.* (quoting *Helicopteros Nacionales De Colom. v. Hall*, 466 U.S. 408, 416, 104 S. Ct. 1868, 80 L. Ed. 2d 404 (1984)).

Specific jurisdiction is easily met here as the violations of federal securities laws alleged in the Complaint were specifically promoted to and directed at victim investors in the United States. *See New Wellington Fin. Corp.*, 416 F.3d at 295. The sale of unregistered securities and fraud which harmed United States investors provides the very basis for the suit. *See Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 397 (4th Cir. 2003). Indeed, as alleged in the Complaint, Lee was a "founder" of HyperFund, and was "centrally involved with HypeFund throughout its lifecycle." Complaint ¶¶ 1, 5. And HyperFund was little more than a Ponzi scheme based on the "false promise of guaranteed, high returns from investments in securities" that "raised millions of dollars from retails investors in the United States." Complaint ¶¶ 7-9.

General jurisdiction is also established by virtue of HyperFund promoters, like co-defendant Chunga and others, who worked for Lee and provided continuous and systematic contact with the United States. *ALS Scan, Inc. v. Digit. Serv. Consultants, Inc.*, 293 F.3d 707, 715 (4th Cir. 2002) ("[T]he threshold level of minimum contacts sufficient to confer general jurisdiction is significantly higher than for specific jurisdiction.").

Another consideration regarding personal jurisdiction is weighing "the burden on the defendant, ... the plaintiff's interest in obtaining convenient and effective relief ... [and] the national interest in furthering the policies of the law(s) under which the plaintiff is suing." *Pinker*, 292 F.3d at 370-71 (citations and internal quotation marks omitted). Here, any burden on Defendant is far outweighed by the SEC's interest in obtaining relief for the U.S. investors who

were bilked out of millions of dollars by Lee and HyperFund, given the strong national interest in effectively enforcing U.S. securities law and protecting U.S. Investors, and the integrity of U.S. securities markets. See *Id*. at 372-73.

Therefore, even assuming that Defendant's factual assertions are correct (i.e., that he had not visited the U.S. in the preceding five years; holds an Australian passport; resides in Dubai; previously resided in a number of Asian countries; does not own, operate or control any business within the U.S.; and does not maintain a bank account or have other financial ties with the U.S. Doc. No. 19 at 3-5, ¶ 10-22), these facts are irrelevant. Taken collectively, they do not undermine this Court's personal jurisdiction in any way. Defendant was properly served and the Complaint alleges facts that easily establish jurisdiction under Rule 4(k)(2).

> b.   Venue is proper in Maryland.

Construing Defendant's claims liberally, Defendant makes a passing reference to the propriety of the action being initiated in Maryland. Doc. No. 19 at 3, ¶ 6. However, the Complaint was properly filed in this district. By statute, venue is proper here if Defendants transacted business or an "act or transaction constituting the violation occurred" in the District of Maryland. *Celsion Corp. v. Stearns Mgmt. Corp.*, No. CIV. CCB 00-1214, 2001 WL 55456, at *3 (D. Md. Jan. 18, 2001); 15 U.S.C. § 78aa.

The statute does not limit venue as to each defendant, and courts have found "acts committed by each defendant to provide venue—a single act committed by any one of them will render venue proper." *Id.*, collecting cases. Courts have held that "one defendant's acts in furtherance of a conspiracy involving other defendants are, in essence, 'acts' done by the other defendants for venue purposes." *Id.* (citing *Southmark Prime Plus, L.P. v. Falzone*, 768 F. Supp.

487, 489 n.3 (D. Del. 1991); *Bertozzi v. King Louie Int'l, Inc.,* 420 F. Supp. 1166, 1171 (D.R.I. 1976); *Zorn v. Anderson*, 263 F. Supp. 745, 748 (S.D.N.Y. 1966)).

Defendant engaged in acts or transactions in Maryland by nature of HyperFund's sales to U.S. and Maryland investors. And obviously, co-defendant Chunga, a resident of Maryland during the relevant period, engaged in acts in furtherance of the fraud scheme in Maryland.[1] Venue is proper in the District of Maryland.

c.  <u>Defendant was personally served.</u>

As clearly established in the SEC's Return of Service (Doc. No. 15) and Application for Entry of Default (Doc. No. 16), Defendant was properly served. Defendant was personally served on October 16, 2024, when he refused to accept service at the Central Prison in Al Aweer under Fed. R. Civ. P. 4(f)(2)(C)(i) and Maryland law. Doc. No. 15 at 2, 15-1, 15-2, 15-3; Doc. No. 16 at 1-2. That service was also effective under UAE law as the UAE is not a signatory to the Hague Convention on Service, and the service on Defendant complied with Article 9(1)(B) of the UAE Civil Procedure Law in accord with Fed. R. Civ. P. 4(f)(2)(A). Doc. Nos. 15, 15-1, 16.

Defendant cited Maryland Rule 2-535(b) and *Phlonda Peay v. Peginald Barnett* to assert a "mistake" in service of process. Doc. No. 19 at 2, ¶ 1, and 3, ¶ 7. However, the case and statute are readily distinguished. *Barnett* involved service of a complaint on the defendant's adult sister at an address the plaintiff believed to be the defendant's current residence, but ended up being a prior address (i.e., a mistake in identifying the defendant's current residence). *Peay v. Barnett*, 236 Md. App. 306, 313 (2018).  The court entered default after the defendant failed to answer

---

[1] Co-defendant Chunga's executed consent for partial judgment was filed in this case on January 30, 2024, and a partial judgment was entered on January 31, 2024. Doc. Nos. 2 and 3. Co-defendant Chunga also pled guilty in the related criminal case, and her sentencing hearing is pending. *United States v. Brenda Chunga*, RDB 24-0001, Doc. No. 10. The SEC will seek a final judgment after co-defendant Chunga is sentenced in the criminal matter.

but on appeal, the court reversed and remanded with instructions for the lower court to apply a specific two-part test regarding service and the defendant's knowledge of the suit. *Id.* at 330.

But this case has no bearing on the issues here. There was no "mistake" here as Defendant was properly served. And it is worth noting that Defendant had actual knowledge of commencement of the civil action in February of 2024, as evidenced by the article in the *Australian Financial Review*. For the same reason, Maryland Rule 2-535(b) is inapplicable as that rule gives the court "revisory power and control" over a default judgement "in the case of fraud, mistake, or irregularity," circumstances that are not present in this case.

Defendant incorrectly asserts that the SEC: failed to locate him, incorrectly noted in the Complaint that his current address was in Australia,[2] attempted to serve him at an address in Dubai, and attempted to serve him via email to an attorney that at one point represented him. Doc. No. 19 at 2, ¶ 2. These allegations are irrelevant as Defendant was properly served on October 17, 2024 in Dubai as clearly established in prior filings. Doc. No. 15, 16.

Therefore, Defendant's defenses regarding insufficient service of process are meritless.

d.  The Complaint alleges sufficient contacts for subject matter jurisdiction.

Defendant also claims that this Court lacks subject matter jurisdiction over the Complaint. He is wrong. This is a case brought by the SEC based on violations of the antifraud provisions of the federal securities laws. Subject matter jurisdiction is clear.

Defendant relies on *Gunn v. Minton*, 568 U.S. 251, 256 (2013) and *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994) for the proposition that the Supreme Court has "repeatedly affirmed that federal courts have limited jurisdiction, restricted to

---

[2] Defendant appears to conflate references to "First Defendant," which is himself, and "Second Defendant," which he used to refer to co-defendant Chunga ("The Plaintiff has failed to located (sic) the Second Defendant, noting Second Defendant's address incorrectly …."). *See* Doc. No. 19 at 2, ¶ 2.

the powers conferred by the Constitution and federal statutes." Doc. No. 19 at 2, ¶ 5. However, while it is true that the federal courts do have limited jurisdiction, this case falls squarely within that jurisdiction so the cases Defendant cited simply do not apply here. *Gunn v. Minton*, 568 U.S. 251, 258 (2013) involved state legal malpractice claims based on underlying patent matters. Likewise, *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 381 (1994) involved application of state law to a claim for breach of a contract, part of the consideration for which was dismissal of an earlier federal suit. Here, there is no reach or indirect application of federal law—the Complaint's three claims for relief are premised on violations of two federal statutes, the Securities Act of 1933 and the Securities Exchange Act of 1934. Complaint at pp. 27-29.

There is no dispute regarding application of the federal securities laws to the facts as alleged in the Complaint. The Complaint alleges a massive global pyramid and Ponzi scheme – founded by Defendant Lee – and clear violations of federal law, that was carried out, in a critical way, in the United States. Moreover, even if one were to conclude that the claims and conduct are predominantly foreign, it is clear that conduct still occurred in the United States and had a substantial impact on United States citizens. The Complaint alleges millions of dollars of losses by U.S. investors. Complaint ¶ 9. This is more than sufficient to establish jurisdiction. *In re Eur. Aeronautic Defence & Space Co. Sec. Litig.*, 703 F. Supp. 2d 348, 356 (S.D.N.Y. 2010); *Europe & Overseas Commodity Traders, S.A. v. Banque Paribas London*, 147 F.3d 118, 128–29 (2d Cir. 1998). Indeed, Section 929P of the Dodd-Frank act makes clear that subject matter jurisdiction exists in a case like this under both the Securities Act and the Exchange Act. *See* 15 U.S.C. §§ 77v(c) and 78aa(b). It states:

> (c)EXTRATERRITORIAL JURISDICTION. The district courts of the United States and the United States courts of any Territory shall have jurisdiction of an action or proceeding brought or instituted by

12

the Commission or the United States alleging a violation of section 77q(a) of this title involving …

(2) conduct occurring outside the United States that has a foreseeable substantial effect within the United States.

*Id.*

There is no question that the complaint alleges that Lee's conduct had a "foreseeable substantial effect within the United States." Defendant's claim regarding subject matter jurisdiction is without merit.

2.  Defendant has not acted with reasonable promptness.

The second consideration under Rule 55(c) is whether Defendant acted with reasonable promptness. As indicated in the SEC's Return of Service (Doc. No. 15) and Application for Entry of Default (Doc. No. 16), Defendant was personally served on October 17, 2024. Defendant's motion to vacate was filed on January 6, 2025.

Defendant offers no explanation for his lack of response from October 17, 2024, until January 6, 2025, a delay of over 80 days. The only possible explanation for the delay of over 80 days Defendant offered was a confusing reference to, "difficulties it has faced with the filing of this response due to the lack of instructions accompanying the documentations which were filed by the Plaintiff to be in the attempted service on the First Defendant." Dec. No. 19 at 3, ¶ 8.

It is unclear what instructions Defendant found lacking. The Summons that was served on Defendant informed him: "A lawsuit has been filed against you. Within 21 days after service of this summons on you (not counting the day you received it) . . . you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure." Doc. No. 13. The Summons then provided Defendant with the address for the SEC. *Id.* The Summons continued, "If you fail to respond, judgment by default will be entered against

you for the relief demanded in the complaint. You also must file your answer or motion with the court." *Id.* The instructions were clear, and as evidenced by Defendant's recent offering, he was clearly able to sort how to file pleadings in the case. In addition, as noted above, Defendant clearly had notice of this lawsuit at the time it was filed – he even gave an interview regarding the allegations.

Therefore, Defendant has not acted with reasonable promptness.

3.   Defendant has not addressed his personal responsibility for default.

Again, in conclusory terms, Defendant asserted that his "failure to file a responsive pleading was not the result of willful neglect but rather due to the failure of the Plaintiff in the first instance to serve the notice of the Complaint, only to falsely incarcerate the First Defendant under an Interpol Red Flag where the First Defendant was held for 60 days without any ability to review any papers until after release at which point the default judgment had been filed and the Plaintiff having been released and not deported under the Red Notice now held a reasonable belief that jurisdiction was lacking." Doc. No. 19 at 5, ¶ 25.

As noted above, Defendant was detained based on the criminal charges in the Indictment, not the SEC's Complaint or any aspect of this *civil* enforcement action.

Defendant has offered no clear explanation regarding why being detained prevented him from responding. Detention alone, without further details, does not excuse delay in responding when required. *Assurance Co. of Am. v. Seepe*, No. 3:09-CV-152 HTW-LRA, 2010 WL 11530489, at *3 (S.D. Miss. Apr. 28, 2010); *see, e.g., Elliott v. Capital Int'l Bank & Trust*, 102 F.3d 549 (5th Cir. 1996) (affirming default judgment against inmate who was served while incarcerated.); *United States v. Real Prop. & Residence*, 149 F.3d 1176 (5th Cir. 1998) (affirming default judgment against inmate who was served while incarcerated.).

14

Defendant is clearly at fault for the delay and has not sufficiently addressed his personal responsibility.

    4.  <u>Prejudice to the non-moving party</u>.

Regarding the fourth consideration, the non-moving party, here the SEC, would certainly suffer some prejudice if the notice of default was vacated. *Armor v. Michelin Tire Corp.*, 113 F.3d 1231 (4th Cir. 1997); *S.C. Nat. Bank v. Baker*, 941 F.2d 1207 (4th Cir. 1991); *Lolatchy v. Arthur Murray, Inc.*, 816 F.2d 951, 953 (4th Cir. 1987). From the time he was served until his first filing, Defendant's dilatory actions caused over eighty days of delay. However, while the SEC has an interest in the prompt administration of justice, we do concede that such a delay has not caused demonstrable significant prejudice.

    5.  <u>Prior history of dilatory action by Defendant</u>.

Fifth, as Defendant's motion to vacate is his first filing in this civil action, there is no prior history of dilatory action by Defendant. However, Defendant is off to a terrible start. As indicated, above, Defendant's initial offering was delayed over eighty days with no clear justification provided – and knew about this action well before he was even served.

It is clear from the interview Defendant had with a news outlet on February 1, 2024, just three days after the Complaint was filed, Defendant had a lot of detail about the allegations in the Complaint and the criminal charges in the Indictment. Doc. No. 15-4.

Further, the SEC, through regional counsel retained in Dubai, made numerous efforts over the course of several months to personally serve Defendant. Doc. Nos. 15, 15-1 to 15-3. While the SEC does not have evidence that Defendant was purposefully avoiding service of the Complaint and Summons prior to his refusal of service in the detention facility on or about October 17, 2024, it is worth noting that he made no effort to address the Complaint filed by the

SEC. If that period is also considered, it amounts to an additional 259 days, on top of the 81 days still lacking an explanation described above.

      6.  <u>Availability of sanctions less drastic</u>.

The final consideration is the availability of sanctions less drastic. Here, if the Notice of Default is vacated, there is no alternative sanction. If the Notice of Default remains, the next procedural legal step would be for the SEC to move for default judgment.

Defendant noted, "Default judgment is an extreme measure that should not be granted where there is a lack of proper service and the Defendant has not been afforded a fair opportunity to respond." Doc. No. 19 at 3, ¶ 9. However, Defendant was properly served, and he is entirely at fault for the delay.

Traditionally, courts weighed this consideration in favor of the defaulting party. However, at least one Circuit has taken a different approach and weighs this factor far less in favor of defaulting parties. In *Matter of State Exch. Fin. Co.*, 896 F.2d 1104, 1106 (7th Cir. 1990), the Seventh Circuit noted:

> The old formulas—a harsh sanction, drastic, should be imposed only as a last resort, for example when other, less drastic remedies prove unavailing, etc.—are still at times intoned. The new practice, however, is different. The entry of a default judgment is becoming—without interference from this court—a common sanction for late filings by defendants, especially in collection suits such as this against sophisticated obligors. At a time of unprecedented caseloads, federal judges are unwilling to allow the processes of the federal courts to be used for purposes of delaying the payment of debts.

This approach merits serious consideration here, especially given the facts of this case. Defendant clearly had actual knowledge of the Complaint (and Indictment) in early January and had no problem answering a reporter's questions when he could have been answering the Complaint or filing motions asserting defenses under Rule 12(b).

After several attempts and 259 days later, Defendant was personally served with the Complaint and Summons. Over eighty days later, Defendant finally submitted his first filing. But it was not an answer to the Complaint's allegations. Instead, Defendant filed a motion to vacate notice of default under 55(c). And in that motion to vacate, Defendant did not raise meritorious defenses or make allegations with sufficient particularity, but baseless claims in the most conclusory terms which did not provide good cause to vacate the default. Given these facts and circumstances, denying the instant motion to vacate is well founded and there are no less drastic sanctions.

## IV.    **CONCLUSION**

For the above reasons, the Commission respectfully requests that the Court enter an order denying Defendant's motion to vacate under Rule 55(c).[3]

January 17, 2025                    Respectfully submitted,


                                   */s/Judson T. Mihok*
                                   Judson T. Mihok
                                   Gregory R. Bockin
                                   David Snyder
                                   Assunta Vivolo
                                   Attorneys for Plaintiff
                                   U.S. SECURITIES AND EXCHANGE COMMISSION
                                   Philadelphia Regional Office
                                   1617 JFK Boulevard, Suite 520
                                   Philadelphia, PA 19103
                                   Phone: 215-597-6500
                                   Fax: 215-597-2740
                                   Email: MihokJ@sec.gov

---

[3] While Lee's arguments on jurisdiction fail, if the Court believes he should be entitled to raise defenses to the merits of this action, and is inclined to lift the default, then the Court should order him to answer the complaint within 21 days.

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on January 17, 2025, the SEC filed a copy of the foregoing using this

Court's CM/ECF system, thereby causing a copy of the document to be served on all parties of

record. On this same date, I also caused a copy of the foregoing to be sent via email, delivery and

read receipt confirmation requested, to the following:

samxuelee@outlook.com

<u>/s/ Judson T. Mihok</u>
Counsel for Plaintiff

18