## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

SECURITIES AND EXCHANGE
COMMISSION,

      *Plaintiff*,

  v.

XUE LEE, A/K/A "SAM" LEE, *et al.*,

      *Defendants.*

Case No. 24-cv-00296-ABA

## MEMORANDUM OPINION

The Securities and Exchange Commission ("SEC") filed this case alleging that Defendants Xue Lee ("Lee") and Brenda Chunga ("Chunga") defrauded investors in violation of U.S. securities laws. After Lee failed to respond to the complaint, the SEC obtained a Clerk's entry of default. ECF No. 18. Lee has filed a *pro se* motion requesting that the Court vacate the default and dismiss the complaint, principally based on arguments about service and personal jurisdiction. ECF No. 19. For the reasons below, the Court will deny the motion to dismiss and grant the motion to vacate.

## I.  BACKGROUND

The SEC alleges that Lee and Chunga participated in a large-scale fraud involving the sale of memberships in a purported crypto-mining company. ECF No. 1. Lee is an Australian citizen who resides in the United Arab Emirates ("UAE") and Chunga was a Maryland resident during the alleged fraud. ECF No. 19 at 3[1]; ECF No. 1 ¶ 15. The alleged scheme involved an entity called "Hyperfund" (later renamed "HyperVerse" and

---

[1] Citations to page numbers refer to CM/ECF pagination for this and the other filings referenced herein, which may not align with a document's original page numbering.

then "HyperNation"), which recruited promotors to sell membership packages in a crypto asset enterprise that were ultimately worthless. ECF No. 1 ¶¶ 2, 7. Hyperfund created press and marketing materials allegedly containing misleading representations and outright lies, which the promotors used to recruit investors. *Id.* ¶¶ 67–70. The complaint alleges that Lee was a central figure in the fraud who "maintained control over HyperFund throughout its existence." *Id.* ¶ 25. Chunga was allegedly a prominent promotor who became "one of only six 'corporate' presenters for HyperFund, and one of only two in the U.S." and was subsequently designated "HyperNation Sales Manager for the U.S." *Id.* ¶¶ 41, 58.

After filing the complaint, the SEC took steps to serve process on Lee. In addition to residing in UAE, Lee had been detained there in connection with parallel criminal charges that have been brought by the United States in this Court. ECF No. 15-1 at 2; *United States v. Lee*, Case No. 1:24-cr-00021-RDB-1 (D. Md.). The SEC coordinated with a law firm in Dubai to effectuate service, and the law firm in turn engaged a process server to serve Lee at the prison. ECF No. 15-1. The papers were presented to an officer of the Central Prison in Al Anweer, Dubai on October 16, 2024. ECF Nos. 15-1 at 2; 15-2. The officer presented the papers to Lee himself on October 17, 2024, though Lee apparently refused to physically take them. ECF No. 15-1 at 2; ECF No. 15-3.

Lee did not respond to the complaint with the 21-day deadline provided in Rule 12(a), a deadline that was reiterated in the summons he was given. ECF No. 13. The SEC moved for entry of default, which was granted on December 6, 2024. ECF No. 18. Lee's motion to vacate was filed on January 6, 2025. ECF No. 19.

## II.    DISCUSSION

Though styled as a motion to vacate the entry of default, Lee also requests that the Court "dismiss this action for lack of personal jurisdiction and Defects In Service Of Process." ECF No. 19 at 2. Lee addresses the jurisdictional and service arguments throughout his motion, and renews his request for dismissal at the end of his motion. *Id.* at 6. The Court will thus construe the motion as both a motion to vacate default under Rule 55(c) and a motion to dismiss under Rules 12(b)(2) (lack of personal jurisdiction) and 12(b)(5) (insufficient service of process). *See Castro v. United States*, 540 U.S. 375, 381–382 (2003) ("Federal courts sometimes will ignore the legal label that a *pro se* litigant attaches to a motion and recharacterize the motion in order to place it within a different legal category . . . to create a better correspondence between the substance of a *pro se* motion's claim and its underlying legal basis.") (citations omitted).

### A.    Motion to dismiss

The Court will first address Lee's arguments that the complaint should be dismissed for insufficient service of process and lack of personal jurisdiction.

### i.    Pertinent standards of review

Following a challenge to service through a Rule 12(b)(5) motion to dismiss, "[p]laintiffs bear the burden of establishing the validity of service under [Rule] 4." *Morgan Stanley v. Babu*, 448 F. Supp. 3d 497, 504 (D. Md. 2020). An affidavit from a process server "constitutes prima facie evidence of valid service of process," and a defendant's "bare assertions" that the defendant was "not properly served do not suffice to refute the . . . affidavit." *GlaxoSmithKline, LLC v. Brooks*, Case No. 8:22-cv-00364-PWG, 2022 WL 1443735, at *6 (D. Md. May 6, 2022). "To overcome the presumption of

valid service created by the process server's affidavit, a defendant refuting service must provide corroborative evidence from a disinterested witness." *Id.*

At the pleadings stage, the relevant standard for evaluating a personal jurisdiction challenge is whether the plaintiff's allegations, accepted as true, make out a "*prima facie* showing of personal jurisdiction." *Grayson v. Anderson*, 816 F.3d 262, 268 (4th Cir. 2016); *see also Sneha Media & Ent., LLC v. Associated Broad. Co. P Ltd.*, 911 F.3d 192, 196 (4th Cir. 2018) ("[W]e have treated the disposition of Rule 12(b)(2) motions to dismiss for a lack of personal jurisdiction in conceptually the same manner as we treat the disposition of motions to dismiss under Rule 12(b)(6), where we take allegations of the complaint as true for purposes of assessing the motion to dismiss."). "Ultimately . . . a plaintiff must establish facts supporting jurisdiction over the defendant by a preponderance of the evidence." *Grayson*, 816 F.3d at 268. At the pleading stage, however, a court must accept as true a plaintiff's allegations and draw all reasonable inferences in the plaintiff's favor, including with respect to allegations pertinent to jurisdictional matters, and consider whether those allegations make out a *prima facie* showing of personal jurisdiction. *Sneha*, 911 F.3d at 196.

### ii.    Service of process

The standards for serving foreign defendants are provided in Federal Rule of Civil Procedure 4(f). Rule 4(f)(1) identifies one avenue for service abroad: plaintiffs may use "any internationally agreed means of service," such as the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents (the "Hague Service Convention"). The UAE is not a party to the Hague Service Convention or any other

applicable international agreement.[2] So Rule 4(f)(2) applies, which allows for service "as prescribed by the foreign country's law for service in that country in an action in its courts of general jurisdiction." Fed. R. Civ. P. 4(f)(2)(A).

The SEC's service complied with this rule because it comported with UAE law. The return of service filed by the SEC provides a detailed letter from an Emirati law firm describing the UAE's service rules. ECF No. 15-1. The UAE allows service upon "persons in prison" by delivering the papers to the prisoner's "place of existence" and establishing that the papers were "served upon the intended person." Federal Decree by Law No. (42) of 2022 Promulgating the Civil Procedure Code, Official Gazette No. 737 (Oct. 10, 2022), art. 10(4).[3] The return of service contains affidavits attesting to service of process in a manner consistent with this provision: the papers were delivered to the prison and prison officials delivered them to Lee. ECF Nos. 15-2, 15-3.

In his motion, Lee cites a Maryland rule relating to revision of judgments in cases of "fraud, mistake, [or] irregularity," Maryland Rule 2-535(b), and a case where service was held to be deficient even though the defendant had actual knowledge of the complaint, *Peay v. Barnett*, 236 Md. App. 306 (2018). ECF No. 19 at 2–3. But Rule 2-

---

[2] The current list of signatories to the Hague Service Convention can be found at this link: www.hcch.net/en/instruments/conventions/status-table/?cid=17. The U.S. State Department's Judicial Assistance Country Information page for the UAE similarly indicates that it is not party to other international conventions related to service: travel.state.gov/content/travel/en/legal/Judicial-Assistance-Country-Information/UnitedArabEmirates.html.

[3] The cited provision is available in English at the following link: https://uaelegislation.gov.ae/en/legislations/1602. The language of this provision as it appears online is slightly different than the quoted language provided by the SEC's foreign counsel. ECF No. 15-1 at 2. This may be due to translation differences. The differences are immaterial to the present dispute.

535 does not apply to service of process here, particularly given that Lee identifies no facts to support the argument that the SEC's method of service was mistaken or fraudulent. The cited authorities are not relevant to whether the service in Dubai was proper. Lee does not address the service at the prison at all, simply alleging a vague "failure [to] follow the correct diplomatic process." ECF No. 19 at 3. He certainly does not "provide corroborative evidence from a disinterested witness" as necessary to rebut the SEC's affidavit. *GlaxoSmithKline*, 2022 WL 1443735, at *6. The SEC has shown that service of process satisfied the applicable legal requirements, and accordingly Lee's request to dismiss the case for defective service will be denied.

### iii.    Personal jurisdiction

Lee's primary focus in his motion is lack of personal jurisdiction. He argues that the SEC's complaint "failed to establish [a] connection" between himself and "the United States, let alone the State of Maryland[,] sufficient to establish personal jurisdiction." ECF No. 19 at 3. Lee's motion claims that he was not present in the United States in the five years leading up to the complaint, and that he does not have any business or financial ties to the United States. *Id.*

Federal Rule of Civil Procedure 4(k)(1)(A) authorizes personal jurisdiction over a properly served nonresident defendant "who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located." Personal jurisdiction under this rule is permissible if (1) "such jurisdiction is authorized by the long-arm statute of the state in which [the Court] sits" and (2) "the application of the long-arm statute is consistent with the due process clause of the Fourteenth Amendment." *Khashoggi v. NSO Grp. Techs. Ltd.*, 138 F.4th 152, 159 (4th Cir. 2025) (quoting *UMG Recordings, Inc. v. Kurbanov*, 963 F.3d 344, 350 (4th Cir. 2020)). Because Maryland's

6

long-arm statute is "coextensive with the limits of personal jurisdiction set by the due

process clause," these two requirements merge. *Carefirst of Maryland, Inc. v. Carefirst*

*Pregnancy Centers, Inc.*, 334 F.3d 390, 396 (4th Cir. 2003).[4]

   To determine whether an exercise of personal jurisdiction satisfies due process,

courts ask whether a defendant has "such 'contacts' with the forum State that 'the

maintenance of the suit' is 'reasonable, in the context of our federal system of

government,' and 'does not offend traditional notions of fair play and substantial

justice.'" *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351, 358 (2021)

(quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 316–317). There are two

types of personal jurisdiction under this analysis. "General jurisdiction lies in the forum

where the defendant is domiciled or 'fairly regarded as at home,'" and allows the court to

"hear *any* claim against that defendant." *Fuld v. Palestine Liberation Org.*, 606 U.S. 1,

12 (2025) (quoting *Bristol-Myers Squibb Co. v. Superior Ct. of California, San*

*Francisco Cnty.*, 582 U.S. 255, 262 (2017)). Specific jurisdiction, by contrast, is

---

[4] The SEC argues that this Court has personal jurisdiction not only based on specific personal jurisdiction and the Maryland long-arm statute, but also under Rule 4(k)(2). ECF No. 20-1 at 6. Rule 4(k)(2) permits jurisdiction when a defendant is "*not* subject to personal jurisdiction in any state court, but has contacts with the United States as a whole." *Base Metal Trading, Ltd. v. OJSC "Novokuznetsky Aluminum Factory,"* 283 F.3d 208, 215 (4th Cir. 2002) (emphasis added). Jurisdiction under Rules 4(k)(1) and 4(k)(2) are mutually exclusive. If a defendant has minimum contacts with a state giving rise to specific jurisdiction under that state's long-arm statute via Rule 4(k)(1), then the defendant is definitionally subject to personal jurisdiction in at least one state court, and thus ineligible for Rule 4(k)(2) jurisdiction. *See Simone v. VSL Pharms., Inc.*, Case No. 15-cv-1356-TDC, 2017 WL 658711, at *3–9 (D. Md. Feb. 16, 2017). Because the SEC has alleged sufficient minimum contacts with Maryland to give rise to specific jurisdiction under Rule 4(k)(1), this Court does not reach the SEC's alternative argument that personal jurisdiction would be authorized by Rule 4(k)(2).

permitted when the claims "arise out of or relate to the defendant's contacts with the forum." *Bristol-Myers Squibb*, 582 U.S. at 262 (cleaned up). In other words, "there must be an 'affiliation between the forum and the underlying controversy, principally, an activity or an occurrence that takes place in the forum State.'" *Id.* (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)).

A defendant need not be present in the forum state—or ever have been present in the forum state—to be subject to specific personal jurisdiction. Defendants can be subject to specific jurisdiction if, for example, they "deliberately 'reached out'" into the forum state "by, for example, exploiting a market in the forum State or entering a contractual relationship centered there," *Ford Motor Co.*, 592 U.S. at 359 (quoting *Walden v. Fiore*, 571 U.S. 277, 285 (2014)), or by "intentionally direct[ing] . . . tortious conduct toward the forum state, knowing that that conduct would cause harm to a forum resident." *Carefirst*, 334 F.3d at 397–98.

Under these standards, and accepting the SEC's allegations as true (as the Court must do at the pleadings stage, including with respect to personal jurisdiction, *see Sneha Media*, 911 F.3d at 196) the SEC has alleged facts establishing specific personal jurisdiction over Lee. The SEC alleges that Lee had significant contacts with Maryland through Chunga, who was a Maryland resident during the period of the alleged fraud. Chunga was "one of Hyperfund's top promotors and arguably the face of its United States presence," and she was publicly announced as the "HyperNation Sales Manager for the U.S." ECF No. 1 ¶¶ 6, 58. She was eventually one of only two "corporate presenters" for HyperFund in the U.S. *Id.* ¶ 41. These allegations are corroborated by Chunga's guilty plea in a related criminal case. ECF No. 20-1 at 10 n.1; *United States v. Brenda Chunga*, Case No. 1:24-cr-00001-RDB-1, ECF No. 10-1 (D. Md. Jan. 29, 2024)

(stipulation of facts pursuant to plea agreement). The complaint alleges that Lee

"maintained control over HyperFund throughout its existence," *id.* ¶ 25, and that Lee

directed Chunga's conduct as his agent or business associate. *See Bonavire v. Wampler*,

779 F.2d 1011, 1014 (4th Cir. 1985) (finding personal jurisdiction over nonresident

defendants because their in-state co-defendant served as "the soliciting agent for the

enterprise in which [the nonresident defendants] were involved."). This distinguishes

the case from others such as *Base Metal Trading*, where the defendant company did not

have minimum contacts with Maryland in part because it "ha[d] no sales force or other

agents in the United States" and "ha[d] no subsidiaries, affiliates or shareholders in

Maryland." 283 F.3d at 214. The complaint here also alleges that Lee's actions

(including through Chunga) "harmed victim investors" residing in Maryland. ECF No. 1

¶ 11; *see also Carefirst*, 334 F.3d at 401 (explaining that "the place that the plaintiff feels

the alleged injury is plainly relevant to the jurisdictional inquiry," though it must "be

accompanied by the defendant's own sufficient minimum contacts with the state").

Given Chunga's admitted role in the fraud and the foreseeable harm to Maryland

residents, and construing the complaint in the light most favorable to the SEC, this

Court has specific personal jurisdiction over Lee.

Though the Court finds a *prima facie* case for jurisdiction at this stage, the SEC

"must eventually prove the existence of personal jurisdiction by a preponderance of the

evidence, either at trial or at a pretrial evidentiary hearing." *New Wellington Fin. Corp.

v. Flagship Resort Dev. Corp.*, 416 F.3d 290, 294 n.5 (4th Cir. 2005). And Lee's motion

contests the facts underlying personal jurisdiction. *See* ECF No. 19 at 3 (contending that

Lee "does not . . . have control of any business within the United States whether directly

or indirectly). Accordingly, the Court will not preclude Lee from exploring a personal

jurisdiction defense in discovery and/or from raising such a defense at the summary judgment phase. But the SEC's allegations are sufficient for personal jurisdiction at this stage, and accordingly Lee's motion to dismiss the complaint will be denied.

### B.    Motion to vacate entry of default

Under Federal Rule of Civil Procedure 55(c), a court "may set aside an entry of default for good cause." The good cause analysis considers six factors: "[1] whether the moving party has a meritorious defense, [2] whether it acts with reasonable promptness, [3] the personal responsibility of the defaulting party, [4] the prejudice to the party, [5] whether there is a history of dilatory action, and [6] the availability of sanctions less drastic." *Payne* ex rel. *Est. of Calzada v. Brake*, 439 F.3d 198, 204–05 (4th Cir. 2006). The *Payne* factors notwithstanding, the Fourth Circuit has long recognized a "strong preference that, as a general matter, defaults be avoided and that claims and defenses be disposed of on their merits." *Colleton Preparatory Acad., Inc. v. Hoover Universal, Inc.,* 616 F.3d 413, 417 (4th Cir. 2010); *see also Lolatchy v. Arthur Murray, Inc.*, 816 F.2d 951, 954 (4th Cir. 1987) (explaining that "'an extensive line of decisions' has held that [Rule] 55(c) must be 'liberally construed in order to provide relief from the onerous consequences of defaults and default judgments'") (quoting *Tolson v. Hodge,* 411 F.2d 123, 130 (4th Cir. 1969)).

### i.    Potentially meritorious defense

The first *Payne* factor asks whether a defendant has raised a potentially "meritorious defense." *Colleton*, 616 F.3d at 417. The question is not whether the defendant has fully proven a defense at this stage, but rather "whether there is some possibility that the outcome after a full trial will be contrary to the result achieved by the default." *Nat'l Liab. & Fire Ins. Co. v. Rooding*, Case No. 15-cv-2572-ELH, 2016 WL

5144493, at *6 (D. Md. Sept. 21, 2016) (quoting *Augusta Fiberglass Coatings, Inc. v. Fodor Contracting Corp.*, 843 F.2d 808, 812 (4th Cir. 1988)). "All that is necessary to establish the existence of a meritorious defense is a presentation or proffer of evidence, which, if believed, would permit the court to find for the defaulting party." *Armor v. Michelin Tire Corp.*, 113 F.3d 1231 at *2 (4th Cir. 1997); *see also Broad. Music, Inc. v. Carrie Bell, Inc.*, Case No. 19-cv-1517-JKB, 2019 WL 6255173, at *4 (D. Md. Nov. 22, 2019) (accepting the movant's "relatively threadbare defense" as "possibl[y] meritorious" due to "the Fourth Circuit's admonishment to interpret Rule 55(c) motions liberally"). But mere "conclusory statement[s]" without any "affidavit[s], declaration[s], or . . . facts in support of an argument" are insufficient. *Timilon Corp. v. Empowerment Just. Ctr. Corp.*, 738 F. Supp. 3d 669, 681 (D. Md. 2024); *see also Wainwright's Vacations, LLC v. Pan Am. Airways Corp.*, 130 F. Supp. 2d 712, 718 (D. Md. 2001) ("Although conclusive proof is not required, neither is 'a bare allegation of a meritorious defense' sufficient") (quoting *Jones v. Phipps*, 39 F.3d 158, 165 (7th Cir. 1994)); 10A Fed. Prac. & Proc. Civ. § 2697 (4th ed.) ("A majority of the courts that have considered the question have refused to accept general denials or conclusory statements that a defense exists; they have insisted upon a presentation of some factual basis for the supposedly meritorious defense.").

Lee's motion notes generally that he "vehemently denies all allegations set forth in Plaintiff's Complaint," but he focuses primarily on his defenses that 1) the Court lacks personal jurisdiction and 2) service of process was defective. ECF No. 19 at 2. Lee also

contends that default should be set aside because "the Court lack[s] subject matter jurisdiction over the case." *Id*.[5]

    For the reasons articulated above, Lee's service argument is meritless. Any subject matter jurisdiction defense is also meritless. Federal courts have subject matter jurisdiction to hear disputes "arising under" federal law. 28 U.S.C. § 1331. Here, the complaint accuses Lee and Chunga of violating two federal statutes: the Securities Act of 1933 and the Securities Exchange Act of 1934. ECF No. 1 ¶¶ 112–121 (alleging violations of 15 U.S.C. §§ 77e(a), 77e(c), 77q(a), & 78j(b)). The claims thus arise under federal law, and this Court has subject matter jurisdiction.

    As for the personal jurisdiction defense, the Court has concluded that the SEC has made out a prima facie case of personal jurisdiction. *See* § III.A.iii, *supra*. Lee contends that once there is full discovery, the evidence will establish that this Court lacks personal jurisdiction over him, because he has no business ties or contacts to the United States whatsoever. ECF No. 19 at 4. He declares that he does not "own, operate or have control of any business within the United States whether directly or indirectly" or "maintain any other financial ties to the jurisdiction, directly or indirectly." *Id*. And if Lee did not have any direct or indirect connections to the United States, that could potentially alter the minimum contacts analysis such that this Court would not have

---

[5] The SEC understands Lee to also be potentially challenging venue because he referred to not having contacts with Maryland. ECF No. 20-1 at 9–10. But in context, the statement the SEC cites pertains to Lee's personal jurisdiction argument: "In this case, the SEC has failed to establish the First Defendant connection with the United States, let alone the State of Maryland *sufficient to establish personal jurisdiction*." ECF No. 19 at 3 (emphasis added). This Court will not address a venue argument because Lee did not raise one.

personal jurisdiction. Although the statements contained in the motion are far from detailed, they are not wholly conclusory either. They do contain factual allegations that, if proven, could potentially support a defense. But because the Court finds that the personal jurisdiction defense is highly unlikely to be meritorious for the reasons explained above, namely Lee's apparent connection to a Maryland resident who was a main player in the alleged fraud, this factor will weigh neutrally in the analysis.[6]

### ii.    Reasonable promptness

"A party attempting to set aside an entry of default must act with reasonable promptness in responding to the entry of default." *Timilon Corp.*, 738 F. Supp. 3d at 681 (quoting *Nat'l Liab.*, 2016 WL 5144493, at *7). Here, the notice of default was entered on December 6, 2024 and warned Lee that he had 30 days to file a motion to vacate, establishing a deadline of January 5, 2025. ECF No. 18. Lee filed his motion to vacate one day late, on January 6, 2025. He states that he experienced "difficulties" in "the filing of this response due to the lack of instructions accompanying the documentations which were filed by the Plaintiff to be in the attempted service." ECF No. 19 at 3. The SEC's service was unrelated to the entry of default, the notice of which clearly stated that a response was due within 30 days. ECF No. 18. But Lee's motion was only late by a day, and substantially longer delays have been held to not weigh against vacating a default. *See, e.g.*, *Nat'l Liab.*, 2016 WL 5144493, at *7 ("In my view, the Motion to Vacate was

---

[6] Further undercutting the potential merit of Lee's proffered personal jurisdiction defense is the possibility of jurisdiction in the alternative under Rule 4(k)(2) discussed above. If Lee were to eventually show that he does not have sufficient contacts with Maryland, it is possible the SEC would be able to establish personal jurisdiction by showing that Lee had sufficient contacts with the United States generally but no state individually.

filed with reasonable promptness, about five weeks after the entry of default."); *Acosta v. Vera's White Sands Beach Club, LLC*, Case No. 8:16-CV-00782-PX, 2019 WL 1767147, at *3 (D. Md. Apr. 22, 2019) ("[O]nly two months passed between the Court's granting of default and [the] motion to vacate.").

The SEC emphasizes Lee's failure to respond to the summons as evidence of his lack of reasonable promptness. ECF No. 20-1 at 13. Other cases weighing the *Payne* factors have considered a party's evasion of service or prior delay. *See, e.g.*, *Timilon Corp.*, 738 F. Supp. 3d at 681 ("Because the original motion to vacate entry of default was filed timely but Defendants also delayed proceedings by evading service, the second *Payne* factor weighs only slightly in favor of vacating entry of default."); *Atinus Works, LLC v. Greenclean, Inc.*, Case No. 24-cv-614-MJM, 2025 WL 487336, at *2 (D. Md. Feb. 13, 2025) (stating under the reasonable promptness inquiry that "Defendant took no action in response to this suit until after the Clerk entered the default"). But here, the Court does not consider Lee's prior delay as necessarily bearing on the second *Payne* factor, which focuses on a movant's reasonable promptness in responding to the notice of default itself. Two reasons support this conclusion. First, to consider the movant's pre-default actions under factor 2 would duplicate factor 3 (personal responsibility) and especially factor 5 (history of dilatory action). The SEC's arguments that Lee was dilatory in answering the summons are best addressed to these factors. Second, the cases the *Payne* court cited when outlining the factors clarify that factor 2 was meant to focus upon promptness in moving to vacate the default. *See Lolatchy*, 816 F.2d at 953 ("[W]e have held that relief from a judgment of default should be granted where the defaulting party acts with reasonable diligence *in seeking to set aside the default*.") (emphasis added); *Consol. Masonry & Fireproofing, Inc. v. Wagman Const. Corp.*, 383

14

F.2d 249, 251 (4th Cir. 1967) (examining the reasons for Defendant's delay in moving to set aside a default).

In short, the reasonable promptness factor weighs in favor of vacating the entry of default.

### iii.    Personal responsibility of defaulting party and history of dilatory action

The third *Payne* factor "pertains to whether the defaulting party was personally responsible for the default," and the fifth "considers whether there is a 'history of dilatory action.'" *Nat'l Liab.*, 2016 WL 5144493, at *7 (quoting *Colleton*, 616 F.3d at 417). These two factors partially overlap, so they "can be addressed together." *Timilon*, 738 F. Supp. 3d at 682. "In considering personal responsibility, district courts in the Fourth Circuit have found that default judgment is reserved only for cases where the party's noncompliance represents bad faith or complete disregard for the mandates of procedure and the authority of the trial court." *Id.*

Lee largely blames the SEC for his dilatoriness in responding to the complaint. First, he argues that he was "falsely incarcerat[ed]" due to the actions of the U.S. government and "without any ability to review any papers until after release." ECF No. 19 at 5. Incarceration alone does not usually excuse dilatory conduct without further context to justify the delay. *See, e.g.*, *United States v. Cowley*, 814 F.3d 691, 699 (4th Cir. 2016) (holding that "the mere fact that a prisoner is incarcerated and unable to search freely for an investigator cannot serve as the basis for . . . 'good cause'" sufficient to allow an untimely habeas motion); *Jones v. Phipps*, 39 F.3d 158, 163 (7th Cir. 1994) (declining to set aside a default judgment partially because "a jailed litigant ought to be treated neither worse, nor better, than any other party when it comes to the conduct of

litigation unless some special circumstance of confinement interferes with her ability to manage legal affairs"). And, as the SEC argues, Lee does not provide any information about his incarceration to support the conclusory statement that he was unable to review the papers. ECF 20-1 at 14. Further, the record indicates that Lee refused to accept the summons and complaint, not that he was prevented from reviewing them. ECF No. 15-1 at 3.

Lee also contends that the instructions on the summons were lacking. ECF No. 19 at 5. But as the SEC correctly notes, the summons clearly stated that Lee had 21 days to respond to the complaint. ECF Nos. 8; 20-1 at 13–14. This is no excuse for the delay.

Other than his failure to respond to the summons, there is no record of additional dilatory action. The SEC suggests that Lee may have evaded service, citing his admissions in a news interview to prove that he had actual knowledge of the complaint shortly after it was filed. ECF No. 20-1 at 15; ECF No. 15-4. But the SEC concedes that it "does not have evidence that Defendant was purposefully avoiding service of the Complaint and Summons prior to his refusal of service in the detention facility" and more broadly that "there is no prior history of dilatory action by Defendant." ECF No. 20-1 at 15.

The SEC has not shown "bad faith or complete disregard" by Lee for this Court's procedures. *Timilon*, 738 F. Supp. 3d at 682. But he is responsible for the delay caused by his failure to respond to the complaint. Factors 3 and 5 favor default.

### iv.    Prejudice to non-moving party

The fourth factor analyzes prejudice for the party who sought entry of default (here, the SEC). "In the context of a motion to set aside an entry of default, as in other contexts, delay in and of itself does not constitute prejudice to the opposing party."

16

*Colleton*, 616 at 418. This is partly because "no cognizable prejudice inheres in requiring a plaintiff *to prove* a defendant's liability, a burden every plaintiff assumes in every civil action filed in every federal court." *Id.*

This factor weighs against default because the SEC has made no showing of prejudice other than delay. The SEC notes that it would suffer "some prejudice if the notice of default was vacated" because the "Defendant's dilatory actions caused over eighty days of delay."[7] ECF No. 20-1 at 20. But the SEC concedes that "such a delay has not caused demonstrable significant prejudice." *Id.* The SEC has experienced no cognizable prejudice due to Lee's lack of response, as it has merely caused delay.

### v.    Availability of sanctions less drastic

"Where appropriate, courts in this circuit have crafted alternative sanctions to avoid default." *Nat'l Liab.,* 2016 WL 5144493, at *9. A classic lessor sanction is attorneys' fees "for the costs of litigating the entry and setting aside of the default order." *Acosta*, 2019 WL 1767147, at *4. Courts may also fashion ongoing requirements on the moving party as a condition of granting relief to "facilitate discovery, compensate for obstructionist tactics, and protect the ability of the nondefaulting party to obtain an appropriate remedy." 10A Fed. Prac. & Proc. Civ. § 2700 (4th ed.).

Here, as explained above, Lee moved not only to vacate the entry of default but also to dismiss the complaint. The Court herein has denied the motion to dismiss, but also on balance concludes that it is appropriate to vacate the entry of default.

---

[7] The government's calculation of delay runs from the date Lee was served, October 16, 2024, until the date he filed his motion to vacate, January 6, 2025. This is a span of 82 days. But Lee's deadline to respond after being served was November 6, 2024. Fed. R. Civ. P. 12(a)(1)(A)(i). It would thus be more accurate to characterize the delay in these terms as 61 days.

Contemporaneous with this memorandum and the accompanying order, the Court will be entering a scheduling order. If either party concludes that good cause justifies a longer schedule, they may so move. But the Court expects to hold the parties, including Lee, to all deadlines, and future conduct reflecting delay or evasion may justify sanctions, including up to the most severe sanction, entry of default judgment. *See Mey v. Phillips*, 71 F.4th 203 (4th Cir. 2023) ("If a party fails to obey an order to provide or permit discovery, fails to appear for a deposition, or fails to serve a response after being served with interrogatories or a request for production, the district court may order sanctions, including 'rendering a default judgment against the disobedient party.'") (quoting Fed. R. Civ. P. 37(b)). The Court at present has no reason to believe that will be the case, but concludes that setting strict deadlines for discovery and dispositive motions, and the tools of case management available to the Court, are appropriate alternatives that exist, and the existence of which render this *Payne* factor as weighing in favor of vacating the entry of default.

*  *  *

Ultimately, the *Payne* factors are mixed. Lee acted relatively promptly in moving to set aside the default; there is no discernable prejudice to the SEC; and alternatives to default are available to move this case forward. On the other hand, Lee is responsible for the delay and his actions have shown some dilatoriness. The meritorious defense factor is close: although Lee has just barely provided sufficient factual allegations to potentially make out a personal jurisdiction defense, the Court finds it highly unlikely that this argument will be meritorious. Lee comes out slightly ahead overall, and Fourth Circuit precedent is clear that even a tie would go to the movant. *See Tolson v. Hodge*, 411 F.2d 123, 130 (4th Cir. 1969) ("Any doubts about whether relief should be granted should be

18

resolved in favor of setting aside the default so that the case may be heard on the merits."). The motion to vacate entry of default will be granted, but subject to the stringent conditions set forth in the scheduling order that will follow this memorandum opinion.

## III.    CONCLUSION

For these reasons, the Court will deny the Defendant's motion to dismiss and grant the Defendant's motion to vacate the entry of default in an accompanying order. The parties are further directed to the scheduling order, which will be entered contemporaneously.

Date:  September 30, 2025              _____/s/_____
                                      Adam B. Abelson
                                      United States District Judge

19